**Concurring Opinion filed April 3, 2025**



In The

# Fifteenth Court of Appeals

---

### NO. 15-24-00007-CV

---

## MIKE MORATH IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF EDUCATION, Appellant

### V.

### KINGSVILLE ISD, ET AL., Appellees

---

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-23-004675**

---

### CONCURRING OPINION

I join fully in the Court's opinion and judgment. I write separately to explain why cases like this relating to the A to F school ratings do not belong in court. The Legislature granted exclusive, final, and unappealable jurisdiction of such disputes to the state's Commissioner of Education; entertaining them in court instead is why the school ratings for 2022–23 won't be published until 2025 at the earliest.

Since 2009, § 39.151 of the Education Code has required the Commissioner to create an internal review process that schools and school districts must use to challenge "an agency decision … relating to an academic or financial accountability rating that affects the district or school."[1] Though no 2022–23 academic ratings have yet been issued, *every one* of the agency decisions challenged here is "related to" those nascent ratings: (a) the decision to postpone them beyond August 15th, (b) the decision to adopt standards governing them and materials explaining them after the school year ended, and (c) the decision to base them on STAAR tests validated by the agency's Technical Advisory Committee (TAC). By statute, *every one* of these issues should be decided internally, not in court.

Had § 39.151 been followed, 2022–23 academic ratings would have been published long ago. That section requires the Commissioner, to review the recommendation of an external committee,[2] and then to "make a *final* decision" that "may *not be appealed*" under any other law.[3] This is not a standard exhaustion-of-remedies rule where the agency goes first and the courts review second; this is an *exclusive* process that makes the Commissioner's decision both *first* and *last*. As the Supreme Court wrote in its only opinion addressing this provision, the Legislature's plain intent in adopting § 39.151 was "to keep the Commissioner's decisions regarding academic and financial accountability ratings and charter revocations *out of the courts*."[4]

---

[1]    Act of June 1, 2009, 81st Leg., R.S., ch. 895, § 59, 2009 TEX. GEN. LAWS 2357, 2402 (codified at TEX. EDUC. CODE § 39.151); *see also* 19 TEX. ADMIN. CODE § 97.1001(a)(4) (2024) (Tex. Educ. Agency, Accountability Rating System) (providing that the TEA will publish a manual that includes the procedures for submitting a rating appeal).

[2]    § 39.151(b).

[3]    § 39.151(d).

[4]    *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 71 (Tex. 2018) (emphasis added).

Filing an "ultra vires" claim is not a way to get around a "final and not appealable" statutory rule. "[W]hen the Legislature makes an executive decision final and unappealable, a plaintiff *may not* obtain reversal of that decision through an *ultra vires* action unless the decision presents a manifest conflict with express statutory terms."[5] The Districts requested relief here is not based on any manifest conflict with the statute; the only relief they requested is cancelling the 2022–23 school ratings entirely,[6] which as shown in the Court's opinion the statute's text does not support.

But the Districts had no opportunity to pursue a § 39.151 remedy because Commissioner declined to allow it. Nobody raised § 39.151 in this Court or the trial court, and when we requested post-submission briefing to address it (as we must "when our jurisdiction seems in doubt"[7]), all parties denied that the section applied. The rule the Commissioner adopted under § 39.151 strictly limited appeals "to such rare cases as a data or calculation error,"[8] and his post-submission brief repeated his settled position that "[r]equests to modify the 2023 state accountability calculations adopted by commissioner rule are not considered." [postsub at 5]

I do not fault the Commissioner for attempting to limit administrative appeals to data or calculation errors. Those would likely be fewer and easier to decide than the issues we face here. But § 39.151 applies to challenges to "an agency decision

---

[5]     *Honors Acad.*, 555 S.W.3d at 74 (emphasis added).

[6]     The Districts never asked that the Commissioner be ordered to issue rules, ratings, or explanatory materials by the statute's deadlines, only that the 2022–23 ratings be cancelled.

[7]     *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 71 (Tex. 2021) ("[W]e must consider [jurisdiction] sua sponte when our jurisdiction seems in doubt.").

[8]     *See* Texas Education Agency, 2023 Accountability Manual for Texas Public School Districts and Campuses, p. 87, https://tea.texas.gov/texas-schools/accountability/academic-accountability/performance-reporting/2023-accountability-manual-full.pdf (last visited Mar. 5, 2025).

… *relating to* an academic or financial accountability rating" — and as many important decisions "relating to ratings" may be made *before* any ratings are issued as thereafter.

The issues here could have been decided much more quickly in an internal agency process than we could in court. None of the parties here needed any background or explanation of the issues, as they were all active players in them. All had been discussing these disputes during in-person and online meetings for months before this suit was filed. Many of the parties, their leaders, and their attorneys have years of experience dealing with administration and management of schools and districts. But judges do not; our attempts to reach the same level of understanding based on a record with 195 pages of briefing, 2,800 pages of trial exhibits, 275 pages of oral testimony, and 929 pages in the clerk's record necessarily took months. The Commissioner could have fairly and finally decided this case internally before lawyers suited up for their first hearing in court.

Yet it is too late now to dismiss this case and start all over in an administrative process. Besides rendering the last 19 months "a pointless waste of time and resources,"[9] the text of § 39.151 itself precludes dismissal for want of jurisdiction here because suits in court are prohibited only "if the district or school has had an opportunity to challenge the decision" administratively. The Districts never had that opportunity due to the Commissioner's rule and legal position that only calculation-error claims could be filed administratively. The parties forced courts to decide the merits instead, with the resulting delay. I write separately to discourage them from doing so again.

---

[9] *See Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 194 (Tex. 2024) ("[W]e have never held that administrative remedies must be exhausted when they cannot moot the claim—when exhaustion would be a pointless waste of time and resources.").

I share the Legislature's frustration that for years the public schools in Texas have too often been governed from courtrooms. As a sign of that frustration, one of the priority bills filed in the current legislative session is targeted at the claims in this very lawsuit. House Bill 4 in its current form would:

- replace the August 15th ratings deadline with "as soon as reasonably possible in years in which the standards are modified or recalibrated or in which a new assessment instrument is offered."[10]

- remove the "during the school year" deadline for adopting indicators and standards with one that applied only "before issuing the evaluation of a school district or campus";[11]

- clarify that failure to issue a document explaining performance measures, methods, and procedures "does not prevent the assignment of performance ratings" and "may not be the basis of a challenge to a performance rating";[12]

- provide that the TTAC may declare STARR tests "valid and reliable";[13]

- bar the Commissioner from issuing "Not Rated" reports for all schools or districts statewide;[14]

- provide that ultra vires challenges are not exempted from the mandatory internal review in § 39.151.[15]

- extend remedies applicable to districts that fail accreditation or performance standards to those that "initiate[] or maintain[] an action or proceeding against the state or an agency or officer of the state";[16]

---

[10] Tex. H.B. 4, 89th Leg., R.S., § 17(a-3), (c) (2025).

[11] *Id*. § 18.

[12] *Id.* § 19(d).

[13] *Id*. § 7(a-11).

[14] *Id.* § 17(a-6).

[15] *Id*. § 20(e).

[16] *Id*. § 23(3).

- prohibit using federal, state, or local funds for such suits, "including an action or proceeding that includes a claim of ultra vires conduct";[17] and

- in cases alleging ultra vires conduct, require districts to deposit fees due to their attorneys in an escrow account, to be released only if the suit succeeds after all appeals are final, with any leftover funds escheating to the school foundation fund.[18]

This bill may or may not pass, but it illustrates a truth that courts too often forget: if current laws are not followed, the Legislature may enact more drastic ones. I would clarify that trial courts should apply § 39.151 exactly as it says.

## Conclusion

Failing schools require prompt action from state and local officials, from students and their families, and from voters. The 19-month delay occasioned by litigating these issues in court shows why the Legislature could reasonably declare that the Commissioner should be the final and ultimate arbiter of them. Every time a judicial resolution is sought, a final resolution will be delayed for a year or two. That is what the Districts obtained, filing suit and enjoining the 2022–23 A to F grades until at least 2025. I would make it the law in our statewide district that lower courts should not entertain disputes about school performance ratings unless the Constitution or the Legislature provides otherwise.

/s/ Scott Brister

Scott Brister
Chief Justice

---

[17]    *Id.* § 26(c-1).

[18]    *Id.* §§ 27(a), (b).